Kseniya Zilberman, Esq. (Bar ID # 414162023)
JACKSON LEWIS P.C.
44 South Broadway, 14th Fl
White Plains, New York 10601
(914) 872-8060
Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK FULTZ and ADVOCATES FOR DISABLED AMERICANS (AFDA),<br><br>Plaintiffs,<br><br>vs.<br><br>JLM PARK RIDGE, LLC, PRM HOSPITALITY, LLC, MARRIOTT INTERNATIONAL, INC., and JOHN DOE(S) A through Z, fictitious names of Defendants,<br><br>Defendants. | Civil Action No.<br><br>**NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, BERGEN COUNTY** |

To: Melissa E. Rhoads
Clerk of the Court
United States District Court, District of New Jersey
Office of the Clerk
Martin Luther King Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, New Jersey 07101

Anthony J. Brady, Jr., Esq.
1 Rose Avenue
Maple Shade, New Jersey 08052
Attorney for Plaintiffs

Defendant Marriott International, Inc. ("Marriott" or "Defendant"), by and through its undersigned counsel and with the consent of all other properly joined and served defendants, hereby files this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey, from the Superior Court of New Jersey, Law Division,

Bergen County, as provided by Title 28, United States Code, Chapter 89. Defendant Marriott states as follows:

1. Plaintiff Mark Fultz commenced this action on March 9, 2026, by filing a Complaint in the Superior Court of New Jersey, Law Division, Bergen County, captioned Mark Fultz v. JLM Park Ridge, LLC, PRM Hospitality, LLC, and John Doe(s) A through Z, fictitious names of Defendants, bearing Docket No. BER-L-002874-26.

2. Plaintiff Mark Fultz filed First Amended Complaint on May 18, 2026.

3. Plaintiff Mark Fultz filed a Second Amended Complaint ("Complaint") on October 5, 2026, joining Advocates for Disabled Americans ("AFDA") as a plaintiff and naming Marriott as a defendant in the Superior Court of New Jersey, Law Division, Bergen County, captioned Mark Fultz and Advocates for Disabled Americans (AFDA) v. JLM Park Ridge, LLC, PRM Hospitality, LLC, Marriott International, Inc., and John Doe(s) A through Z, fictitious names of Defendants, bearing Docket No. BER-L-002874-26 ("the State Court Action"). A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit A.

4. Defendant Marriott has not been served with a copy of the Summons and Complaint. Accordingly, this removal is timely under 28 U.S.C. § 1446(b).

5. No proceedings have taken place in the State Court Action. Defendant has not filed an answer or other responsive pleading to Plaintiffs' Complaint, nor made any appearance or argument before the Superior Court of New Jersey.

6. As set forth in the Complaint, Plaintiff Fultz is a resident of the State of Florida, residing in Margate, Florida, and Plaintiff Advocates for Disabled Americans is located in Glassboro, New Jersey.

7. Plaintiff's four (4) count Complaint sets forth the following causes of

action: (Count I) discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA") against JLM Park Ridge, LLC, PRM Hospitality, LLC and Marriott; (Count II) discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD") against JLM Park Ridge, LLC, PRM Hospitality, LLC and Marriott; (Count III) fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("NJCFA") against JLM Park Ridge, LLC, PRM Hospitality, LLC and Marriott; and (Count IV) liability for the conduct described above under Title III of the ADA, the NJLAD, and/or the NJCFA against Fictious Defendants John Doe(s) A through Z.

8. Specifically, Plaintiffs allege that, prior to his stay at the Marriott Park Ridge ("Hotel") from February 27 to 28, 2026, Plaintiff Fultz accessed and relied upon representations on the Hotel's website and reservation system that the Hotel and its designated accessible guest rooms were accessible to individuals with disabilities. Plaintiff Fultz thereafter stayed at the Hotel in a room designated as accessible. Plaintiffs allege that, during his stay, Plaintiff Fultz encountered various physical barriers identified in the Complaint that impaired his ability to access and fully use the Hotel's services, accommodations, and facilities. <u>See</u> Exhibit A at ¶¶ 24–27.

9. Count I of the Complaint asserts a claim arising under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Count I arises under Title III of the ADA. Because this federal claim appears on the face of Plaintiffs' Complaint, this action is removable under 28 U.S.C. § 1441(a). <u>See</u> <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).

10. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction

over the state law claims asserted in Counts II, III, and IV (NJLAD and NJCFA). See Garcia v. GMC, 910 F. Supp. 160, 164 (D.N.J. 1995) ("Section 1367 provides for supplemental jurisdiction over claims that form part of the same case or controversy over which a Federal court has original jurisdiction."). The Third Circuit relies on United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), to determine when a court may exercise supplemental jurisdiction. Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995). First, "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court." Id. Further, the following two requirements must be met:

> [1] The state and federal claims **must derive from a common nucleus of operative facts**. [2] But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

Id. (emphasis added).

All of Plaintiffs' claims arise from the same nucleus of operative facts: Plaintiff Fultz's use of the Marriot Park Ridge's webpage and subsequent stay at the Marriot Park Ridge from February 27 to 28, 2026. See Exhibit A at ¶¶ 23–35. Plaintiffs' NJLAD and Title III ADA claims rest on substantially identical factual allegations alleging that the same barriers constitute discrimination and a failure to accommodate under each statute. Id. at ¶¶ 36–67. Plaintiffs' NJCFA claim is likewise inextricably intertwined with the NJLAD and ADA claims, as it alleges that the Hotel webpage fraudulently misrepresented the accessibility of the hotel and its accommodations for individuals with disabilities. Id. ¶¶ 57–65

11. All other properly joined and served Defendants have consented to, and join in, the removal of this action, pursuant to 28 U.S.C. § 1446(b)(2)(A).

12. Accordingly, Plaintiffs' Complaint is properly removed to this Court on the basis of federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and

1446(b)(2)(A).

13. Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff, including Plaintiff's failure to state any claims upon which relief may be granted.

14. Pursuant to 28 U.S.C. §§ 110 and 1441(a), venue properly lies in this District Court because the State Court Action was filed in New Jersey and this is the judicial district in which the action arose at the Marriott Park Ridge located at 300 Brae Boulevard, Park Ridge, New Jersey.

15. Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of the removal of this action to all adverse parties and has filed a copy of this Notice with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

**WHEREFORE**, Defendant Marriott respectfully requests that this action be removed from the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Fl
White Plains, New York 10601
(914) 872-8060
Attorneys for Defendants

By: *s/ Kseniya Zilberman*
Kseniya Zilberman

Dated: October 21, 2026

4910-1976-7770, v. 2

# EXHIBIT A

ANTHONY J. BRADY, JR., ESQUIRE
1 Rose Avenue
Maple Shade, New Jersey 08052
(561) 603-6387
Attorney for Plaintiffs
Attorney ID No. 044541984

| | |
|---|---|
| MARK FULTZ and ADVOCATES FOR DISABLED AMERICANS (AFDA),<br><br>Plaintiffs,<br><br>v.<br><br>JLM PARK RIDGE LLC, PRM HOSPITALITY, LLC, MARRIOTT INTERNATIONAL, INC., and JOHN DOE(S) A through Z, fictitious names of Defendants,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-002874-26<br><br>Civil Action<br><br>**SECOND AMENDED COMPLAINT**<br>(Title III of the Americans with Disabilities Act, New Jersey Law Against Discrimination, and New Jersey Consumer Fraud Act) |

Plaintiffs Mark Fultz, residing at Apt. 106, 231 NW 76 Avenue, Margate, Florida 33063, and Advocates for Disabled Americans (AFDA), located at Apt. 101, 20 South Main Street, Glassboro, New Jersey 08028, by way of Second Amended Complaint against Defendants JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc., say:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Mark Fultz resides at Apt. 106, 231 NW 76 Avenue, Margate, Florida 33063. He travels to New Jersey often, including to Bergen County. He visits his grandson, who is a Yearling at the United States Military Academy at West Point, New York, a short drive from the Hotel.

2. Plaintiff Fultz is disabled. He has a mobility impairment from a stroke that substantially limits major life activities, including walking and standing, and he uses a cane and a

motorized scooter. He has a "disability" within the meaning of 42 U.S.C. § 12102(1)-(2) and 28 C.F.R. § 36.105, and within the meaning of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-5(q).

3. Plaintiff Advocates for Disabled Americans ("AFDA") is a civil rights non-profit organization whose purpose is to secure accessibility rights for persons with disabilities. Its members include persons with mobility disabilities, including Plaintiff Fultz. AFDA is joined as a party plaintiff by this Second Amended Complaint. R. 4:9-1; R. 4:30.

4. AFDA has standing to sue on its own behalf and on behalf of its members. First, New Jersey takes a liberal approach to standing: an association may sue to protect its members' interests where it has a sufficient stake in the outcome and there is real adverseness. *Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y.*, 58 N.J. 98, 107-11 (1971). Second, AFDA meets the federal test for associational standing: (a) its members, including Plaintiff Fultz, would have standing to sue in their own right because they encountered the barriers alleged and intend to return; (b) the interest AFDA seeks to protect, equal access for persons with disabilities to places of public accommodation, is germane to its purpose; and (c) neither the claims asserted nor the declaratory and injunctive relief requested requires the participation of individual members. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Third, AFDA is a "person" within N.J.S.A. 10:5-5(a) that may bring an action under N.J.S.A. 10:5-13, and its members, including Plaintiff Fultz, are persons "subjected to discrimination on the basis of disability" who may sue under 42 U.S.C. § 12188(a)(1).

5. Defendant JLM Park Ridge LLC ("JLM") is a limited liability company. Upon information and belief, JLM owns the real property and building located at 300 Brae Boulevard,

Park Ridge, Bergen County, New Jersey 07656, and leases or otherwise makes it available for operation as a hotel.

6. Defendant PRM Hospitality, LLC ("PRM") is a limited liability company. Upon information and belief, PRM operates, manages and/or leases the hotel at that address and holds the franchise or license under which it is operated as a Marriott-branded hotel.

7. The hotel at 300 Brae Boulevard is commonly known as the Marriott Park Ridge (the "Hotel"). Upon information and belief, the Hotel offers approximately 289 guest rooms and suites, a restaurant and pub, a lounge, indoor and outdoor swimming pools, a health club, more than 18,000 square feet of meeting and banquet space, parking, and an online and telephone reservation system.

8. Defendant Marriott International, Inc. ("Marriott") is a corporation with its headquarters at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. Upon information and belief, Marriott is the franchisor or licensor under which the Hotel is operated as the "Marriott Park Ridge," and, under its franchise or license agreement with PRM and/or JLM, Marriott: (a) prescribes and enforces brand design and construction standards for the Hotel, including standards governing accessible guest rooms, public areas and other accessible features; (b) required, reviewed and approved the plans for the renovations of the Hotel in 2014, 2018 and 2026, including through property improvement plans, and retained the right to require modifications to the Hotel to improve its accessibility; (c) conducts inspections and quality assurance audits of the Hotel; and (d) owns, operates and controls the marriott.com website, the Marriott reservation system and the central reservation call centers through which the Hotel's guest rooms, including its accessible guest rooms, are described, advertised, offered and reserved.

9. The Hotel is a "place of public accommodation" within the meaning of 42 U.S.C. § 12181(7)(A) (an "inn, hotel, motel, or other place of lodging") and a "place of lodging" within the meaning of 28 C.F.R. § 36.104. The Hotel is also a "place of public accommodation" within the meaning of N.J.S.A. 10:5-5(l), which expressly includes any "hotel" or "motel."

10. JLM and PRM each own, lease (or lease to), or operate the Hotel within the meaning of 42 U.S.C. § 12182(a), and each is an owner, lessee, proprietor, manager, superintendent or agent of a place of public accommodation within the meaning of N.J.S.A. 10:5-12(f). Marriott also "operates" the Hotel within the meaning of 42 U.S.C. § 12182(a), because it specifically controls the design, construction and modification of the Hotel and of its accessible features, and operates the reservation system through which its accessible guest rooms are described and reserved. See *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1068 (5th Cir. 1995) (franchisor operates a place of public accommodation where it specifically controls the modification of the franchise to improve its accessibility to the disabled). Marriott is likewise a proprietor, manager or agent of the Hotel within the meaning of N.J.S.A. 10:5-12(f). Under 28 C.F.R. § 36.201(b), both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates it are subject to Title III, and as between them, allocation of responsibility by lease or other contract does not relieve either of liability to Plaintiffs.

11. Defendants John Doe(s) A through Z are fictitious names for persons and entities, presently unknown, including any affiliate of Marriott that is a party to the franchise or license agreement for the Hotel, who designed, constructed, altered, owned, leased, managed, franchised, operated or maintained the Hotel, who published or maintained its web pages and

reservation system, or who are otherwise liable for the conduct alleged. Plaintiffs will amend to name them when their identities are learned. R. 4:26-4.

12. This Court has subject matter jurisdiction over Plaintiffs' LAD and Consumer Fraud Act claims and concurrent jurisdiction over their claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.

13. Venue is proper in Bergen County under R. 4:3-2(a) because the cause of action arose in Bergen County and the Hotel is located there.

## THE APPLICABLE ACCESSIBILITY STANDARDS

14. New Jersey has required accessible construction of hotels since the early 1970s. Since 1971, New Jersey law has required that "[a]ll plans and specifications for the construction or remodeling of any public building in the State shall provide facilities for persons with physical disabilities." N.J.S.A. 52:32-4 (L. 1971, c. 269). The statute defines "public building" to include "hotels or motels." N.J.S.A. 52:32-6 (L. 1975, c. 220). The Department of Community Affairs is directed to prescribe the facilities required to provide that access, N.J.S.A. 52:32-5, and has done so through the Barrier Free Subcode of the State Uniform Construction Code, N.J.A.C. 5:23-7, adopted under the State Uniform Construction Code Act of 1975, N.J.S.A. 52:27D-119 et seq., and in effect since 1977.

15. The Barrier Free Subcode incorporates Chapter 11 of the International Building Code as adopted and amended at N.J.A.C. 5:23-3.14(b), which in turn adopts the technical requirements of ICC/ANSI A117.1, Accessible and Usable Buildings and Facilities ("A117.1"). The technical sections of A117.1 cited below correspond in number and substance to the like-numbered technical sections of the 2010 ADA Standards for Accessible Design.

16. The Hotel was constructed in or about 1986, approximately fifteen years after New Jersey first required that hotels be built to provide facilities for persons with physical disabilities, and nearly a decade after the Barrier Free Subcode took effect. The Hotel was therefore required to be designed and constructed in compliance with the Barrier Free Subcode then in effect, and each later alteration was required to comply with the Barrier Free Subcode and A117.1 in effect at the time of that alteration.

17. Under Title III, new facilities first occupied after January 26, 1993, and facilities altered after January 26, 1992, must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a); 28 C.F.R. §§ 36.401, 36.402. Alterations commenced on or after March 15, 2012 must comply with the 2010 ADA Standards for Accessible Design (the "2010 Standards"), which consist of 28 C.F.R. part 36, subpart D, and 36 C.F.R. part 1191, appendices B and D. 28 C.F.R. §§ 36.104, 36.406(a). Places of lodging must also comply with 28 C.F.R. § 36.406(c).

18. For existing elements of the Hotel that have not been altered, Title III requires the removal of architectural barriers where readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304. On and after March 15, 2012, elements that do not comply with the 1991 ADA Standards for Accessible Design (the "1991 Standards") must be brought into compliance with the 2010 Standards when barrier removal is undertaken. 28 C.F.R. § 36.304(d)(2)(ii)(B). The "safe harbor" of 28 C.F.R. § 36.304(d)(2)(i) does not apply to the barriers alleged below because, upon information and belief, none of those elements complies with the 1991 Standards.

19. Although only new construction and alterations must comply with the Standards in full, the Standards remain the measure for pre-existing facilities, because they show whether an existing facility contains architectural barriers that must be removed. As the United States

District Court for the Southern District of New York has held, "even though only new construction and alterations must comply with the Standards, those Standards nevertheless provide valuable guidance for determining whether an existing facility contains architectural barriers," and plaintiffs "are allowed to compare facilities . . . with the requirements laid out in the Standards as part of their effort to establish individual barriers to access." *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 226 (S.D.N.Y. 1999).

20. The same is true under the LAD. In interpreting the LAD in disability discrimination claims, "federal law has consistently been considered for guidance." *Lasky v. Borough of Hightstown*, 426 N.J. Super. 68 (App. Div. 2012) (citation omitted). In *Lasky*, the Appellate Division sustained an LAD claim for overall lack of access to a municipality's existing buildings, parking and sidewalks, where the barriers were documented by expert reports identifying areas of non-compliance with the ADA, ANSI, and the New Jersey Barrier Free Subcode. *Ibid.* The ADA Standards, the Barrier Free Subcode and A117.1 thus provide the guidance for determining whether the Hotel, including its pre-existing elements, denies persons with disabilities access under the LAD.

21. New Jersey has adopted a more protective standard than Title III. For existing facilities, Title III requires the removal of barriers only where removal is "readily achievable," meaning "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §§ 12181(9), 12182(b)(2)(A)(iv). The LAD's implementing regulation, by contrast, requires the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation to make reasonable accommodations to the limitations of a patron with a disability "unless the owner, lessee, proprietor, manager, superintendent, agent or employee of the place of public accommodation demonstrates that making the accommodations would impose

an undue burden on its operation." N.J.A.C. 13:13-4.11(a). Under the LAD the burden is therefore on Defendants to prove undue burden, judged by the overall size of the business, the number and type of its facilities, the size of its budget, the nature and cost of the accommodation, and whether it would fundamentally alter the goods or services offered. N.J.A.C. 13:13-4.11(b). The LAD does not excuse Defendants from removing a barrier merely because its removal is not "readily achievable."

22. Plaintiffs do not assert a private cause of action under the Uniform Construction Code. Plaintiffs allege the Barrier Free Subcode and A117.1 violations below as the measure of the access that the LAD and N.J.A.C. 13:13-4 require a place of public accommodation in New Jersey to provide, and as evidence that Defendants have withheld and denied the Hotel's accommodations, advantages, facilities and privileges to Plaintiffs on account of disability.

## FACTS COMMON TO ALL COUNTS

23. Upon information and belief, after its construction in or about 1986 the Hotel was altered on several occasions, including renovations conducted in 2014, 2018 and 2026. Each of those renovations was undertaken after January 26, 1992 and after March 15, 2012, and was therefore required to comply with the 2010 Standards as well as the Barrier Free Subcode and A117.1 in effect at the time.

24. Before his stay, Plaintiff Fultz reviewed the Hotel's web pages and online reservation system and reserved a room through it. The web pages and online reservation system falsely represented that the Hotel and its accessible guest room were accessible to persons with disabilities, as set out in the Third Count below.

25. On February 27 and 28, 2026, Plaintiff Fultz stayed at the Hotel as a guest in a room which the Hotel designated as an accessible room, both as a patron, to use the Hotel's

lodging, food and beverage and other accommodations, and as a tester, to determine whether the Hotel is accessible to persons with disabilities.

26. Plaintiff AFDA, acting through its member Plaintiff Fultz, likewise visited the Hotel on February 27 and 28, 2026 as a patron and as a tester, consistent with its purpose of securing access for persons with disabilities.

27. Plaintiffs' ability to use the Hotel and its goods, services, facilities, privileges, advantages and accommodations was impaired and denied because of the physical barriers set out below. Each barrier is identified by location, followed by the provisions of the 2010 Standards and of A117.1 that it violates. Each violation of A117.1 is also a violation of the Barrier Free Subcode, N.J.A.C. 5:23-7, and of International Building Code Chapter 11 as adopted at N.J.A.C. 5:23-3.14(b).

***A. Parking and Passenger Loading***

a. The parking serving the Hotel does not comply with the requirements for accessible parking, including the number, location, dimensions, access aisles, slope and identification signage of accessible and van-accessible parking spaces. 2010 Standards §§ 208, 502; A117.1 § 502.

b. The passenger loading zone at the Hotel entrance does not comply with the requirements for accessible passenger loading zones. 2010 Standards §§ 209, 503; A117.1 § 503.

***B. Exterior Accessible Routes and Entrance***

c. The exterior routes from the public street and sidewalk, the parking and the passenger loading zone to the Hotel entrance do not comply with the requirements for accessible routes, including floor and ground surfaces, changes in level,

running and cross slopes, curb ramps and ramps. 2010 Standards §§ 206, 302, 303, 402, 403, 405, 406; A117.1 §§ 302, 303, 402, 403, 405, 406.

d. The entrance and its doors do not comply with the requirements for accessible entrances, doors and doorways. 2010 Standards §§ 206.4, 404; A117.1 § 404.

e. The Hotel does not provide the signage required to identify accessible elements and to direct persons with disabilities to accessible entrances. 2010 Standards §§ 216, 703; A117.1 § 703.

***C. Lobby, Registration Desk and Common Areas***

f. The registration desk and other sales and service counters do not comply with the requirements for accessible counters. 2010 Standards §§ 227, 904; A117.1 § 904.

g. The interior accessible routes, including the lobby and corridors, do not comply with the requirements for accessible routes and protruding objects. 2010 Standards §§ 204, 206, 307, 402, 403; A117.1 §§ 307, 402, 403.

h. Operable parts and self-service elements in the common areas do not comply with the requirements for reach ranges and operable parts. 2010 Standards §§ 205, 228, 308, 309; A117.1 §§ 308, 309.

i. Interior doors on the routes to the guest rooms, restaurant and other common areas do not comply with the requirements for accessible doors. 2010 Standards § 404; A117.1 § 404.

***D. Public Toilet Rooms***

j. The public toilet rooms do not comply with the requirements for accessible toilet rooms, including doors, turning space, toilet compartments, water closets, grab

bars, urinals, lavatories, mirrors and accessories. 2010 Standards §§ 213, 404, 603, 604, 605, 606, 609; A117.1 §§ 404, 603, 604, 605, 606, 609.

***E. Restaurant, Pub and Lounge***

k. The dining surfaces and bar do not comply with the requirements for accessible dining surfaces. 2010 Standards §§ 226, 902; A117.1 § 902.

l. The host stand and bar service counter do not comply with the requirements for accessible service counters. 2010 Standards §§ 227, 904; A117.1 § 904.

m. The routes within the dining areas do not comply with the requirements for accessible routes. 2010 Standards §§ 206.2.5, 402, 403; A117.1 §§ 402, 403.

***F. Number and Dispersion of Accessible Guest Rooms***

n. The Hotel does not provide the required number of guest rooms with mobility features, including guest rooms with roll-in showers, or the required number of guest rooms with communication features. 2010 Standards §§ 224.2, 224.4; 28 C.F.R. § 36.406(c); International Building Code Chapter 11 as adopted at N.J.A.C. 5:23-3.14(b), and the accessible-unit provisions of A117.1.

o. The accessible guest rooms are not dispersed among the various classes of guest rooms, and do not provide choices of types of guest rooms, number of beds and other amenities comparable to the choices provided to other guests. 2010 Standards § 224.5; 28 C.F.R. § 36.406(c).

***G. The Designated Accessible Guest Room***

p. The guest room entry door and its hardware do not comply with the requirements for accessible doors and operable parts. 2010 Standards §§ 309, 404, 806.2; A117.1 §§ 309, 404.

q. The guest room does not comply with the requirements for accessible routes, turning space and clear floor space within the room, including at the bed. 2010 Standards §§ 304, 305, 402, 403, 806.2; A117.1 §§ 304, 305, 402, 403.

r. Operable parts, closets and storage elements in the guest room do not comply with the requirements for reach ranges, operable parts and storage. 2010 Standards §§ 205, 225, 308, 309, 811; A117.1 §§ 308, 309.

s. The guest room bathroom does not comply with the requirements for accessible toilet and bathing rooms, including the door, turning space, water closet, grab bars, bathtub or shower, shower spray unit, lavatory and vanity, mirror and accessories. 2010 Standards §§ 404, 603, 604, 606, 607, 608, 609, 610, 806.2.4; A117.1 §§ 404, 603, 604, 606, 607, 608, 609, 610.

t. Upon information and belief, the same or similar barriers exist in each of the Hotel's other guest rooms designated as accessible.

28. The barriers set out above were personally encountered by Plaintiff Fultz. Plaintiffs reserve the right to amend to include additional barriers identified through discovery and inspection under R. 4:18-1.

29. Removal of the barriers set out above is readily achievable, that is, easily accomplishable and able to be carried out without much difficulty or expense. 42 U.S.C. § 12181(9). Many are among the examples of readily achievable barrier removal identified in 28 C.F.R. § 36.304(b), including creating designated accessible parking spaces, installing ramps, making curb cuts, rearranging furniture, widening doors, installing accessible door hardware, installing grab bars, insulating lavatory pipes, repositioning dispensers, lowering mirrors and closet rods, and lowering a portion of a service counter. A fortiori, removal of the barriers would

not impose an undue burden on the operation of the Hotel within the meaning of N.J.A.C. 13:13-4.11. Defendants operate a full-service, brand-affiliated hotel of approximately 289 rooms and have the financial resources to remove the barriers.

30. To the extent any element was altered after January 26, 1992, including in the renovations of 2014, 2018 and 2026, Defendants were required to make it readily accessible to and usable by individuals with disabilities to the maximum extent feasible, and to make the path of travel to any altered area containing a primary function accessible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. §§ 36.402, 36.403.

31. Defendants have also failed to maintain the Hotel's accessible features in operable working condition, including by placing furniture and other objects within required clear floor spaces and routes. 28 C.F.R. § 36.211.

32. Plaintiffs were not required to request an accommodation or give Defendants notice before suing. Title III contains no pre-suit notice requirement, and a claim alleging an overall lack of access requires no advance notice or request. *Lasky v. Borough of Hightstown*, 426 N.J. Super. 68, 76-78 (App. Div. 2012). A person with a disability is not required to engage in a futile gesture where he has actual notice that a public accommodation does not intend to comply. 42 U.S.C. § 12188(a)(1).

33. Plaintiff Fultz intends to return to the Hotel, both as a guest and as a tester, to use its accommodations and to confirm compliance. He travels to New Jersey often, including to northern New Jersey, and visits his grandson at West Point, New York, a short drive from the Hotel. He is deterred from returning by the barriers and faces a real and continuing threat of discrimination. See *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013).

34. AFDA and its members likewise intend to return to the Hotel as patrons and testers, and are deterred by the barriers.

35. As a result of Defendants' discrimination, Plaintiff Fultz suffered humiliation, embarrassment, indignity, anger, frustration and emotional distress.

## FIRST COUNT

(Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.,
against JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.)

36. Plaintiffs repeat the allegations of the preceding paragraphs as if set forth at length.

37. Title III provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

38. Discrimination under Title III includes: (a) denying an individual with a disability the opportunity to participate in or benefit from the goods, services and accommodations of an entity, or affording an opportunity that is not equal to that afforded to others, 42 U.S.C. § 12182(b)(1)(A)(i)-(ii); 28 C.F.R. § 36.202; (b) failing to make reasonable modifications in policies, practices or procedures, 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a); (c) failing to remove architectural barriers in existing facilities where such removal is readily achievable, 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304; (d) where barrier removal is not readily achievable, failing to make goods and services available through alternative methods, 42 U.S.C. § 12182(b)(2)(A)(v); 28 C.F.R. § 36.305; and (e) failing to make altered facilities readily

accessible to and usable by individuals with disabilities in accordance with the applicable Standards, 42 U.S.C. § 12183(a)(2); 28 C.F.R. §§ 36.402-36.406.

39. A public accommodation that owns, leases or operates a place of lodging must, with respect to reservations made by any means: (i) modify its policies, practices or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms; (ii) identify and describe accessible features in the hotel and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets their accessibility needs; (iii) hold accessible guest rooms for use by individuals with disabilities until all other guest rooms of that type have been rented; (iv) reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the rooms requested are blocked and removed from all reservations systems; and (v) guarantee that the specific accessible guest room reserved is held for the reserving customer. 28 C.F.R. § 36.302(e)(1)(i)-(v).

40. Defendants have violated and continue to violate Title III and its implementing regulations by, inter alia:

a. failing to remove the architectural barriers described in paragraph 27, the removal of which is readily achievable, in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R. § 36.304;

b. failing to make the portions of the Hotel altered in 2014, 2018 and 2026, and the paths of travel to them, readily accessible to and usable by individuals with disabilities in compliance with the 2010 Standards, including the sections cited in

paragraph 27, in violation of 42 U.S.C. § 12183(a)(2) and 28 C.F.R. §§ 36.402, 36.403 and 36.406;

c. failing to provide the required number and dispersion of accessible guest rooms, in violation of §§ 224.2, 224.4 and 224.5 of the 2010 Standards and 28 C.F.R. § 36.406(c);

d. misdescribing the Hotel's accessible features through its reservations service, and failing to identify and describe them in enough detail to permit Plaintiff Fultz to assess independently whether the Hotel and its guest rooms met his accessibility needs, in violation of 28 C.F.R. § 36.302(e)(1);

e. failing to maintain the Hotel's accessible features, in violation of 28 C.F.R. § 36.211;

f. failing to make reasonable modifications in policies, practices and procedures, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a); and

g. failing, where removal is not readily achievable, to make the Hotel's goods and services available through alternative methods, in violation of 42 U.S.C. § 12182(b)(2)(A)(v) and 28 C.F.R. § 36.305.

41. Plaintiffs have no adequate remedy at law and are suffering irreparable harm. Unless enjoined, Defendants will continue to violate Title III. The balance of hardships favors Plaintiffs, and the public interest strongly favors mandating accessibility.

42. Plaintiffs are entitled to injunctive relief under 42 U.S.C. § 12188(a)(1)-(2), which in the case of violations of 42 U.S.C. §§ 12182(b)(2)(A)(iv) and 12183(a) includes an order to alter facilities to make them readily accessible to and usable by individuals with disabilities, and

to reasonable attorney's fees, litigation expenses and costs under 42 U.S.C. § 12205 and 28 C.F.R. § 36.505.

WHEREFORE, Plaintiffs demand judgment against Defendants JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.:

a. Declaring that Defendants, at the commencement of this action, are in violation of Title III of the ADA and its implementing regulations;

b. Enjoining Defendants to alter the Hotel to make it readily accessible to and usable by individuals with disabilities, to remove each barrier set out in paragraph 27, and to bring the Hotel into compliance with the 2010 Standards;

c. Enjoining Defendants to provide the number and dispersion of accessible guest rooms required by the 2010 Standards;

d. Enjoining Defendants to bring their reservations service into compliance with 28 C.F.R. § 36.302(e), to adopt and implement policies to maintain accessible features under 28 C.F.R. § 36.211, and to make reasonable modifications in their policies, practices and procedures;

e. Awarding reasonable attorney's fees, litigation expenses, expert fees and costs; and

f. Granting such other relief as the Court deems just and proper.

## SECOND COUNT

(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., against JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.)

43. Plaintiffs repeat the allegations of the preceding paragraphs as if set forth at length.

44. The LAD declares that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities and privileges of any place of public accommodation without discrimination because of disability, and that this opportunity is a civil right. N.J.S.A. 10:5-4. The LAD is remedial legislation that is to be liberally construed. *Nini v. Mercer Cnty. Cmty. Coll.*, 202 N.J. 98 (2010).

45. It is unlawful for the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, directly or indirectly, to refuse, withhold from or deny any person any of the accommodations, advantages, facilities or privileges thereof on account of disability. N.J.S.A. 10:5-12(f)(1). It is also unlawful for any person to aid, abet, incite, compel or coerce the doing of any act forbidden by the LAD. N.J.S.A. 10:5-12(e).

46. The LAD's implementing regulations prohibit places of public accommodation from discriminating on the basis of disability and require them to make reasonable accommodations to the limitations of patrons with disabilities unless the place of public accommodation demonstrates that doing so would impose an undue burden on its operation. N.J.A.C. 13:13-4.3, 13:13-4.11, 13:13-4.12. As alleged in paragraph 21, this undue burden standard is more protective of persons with disabilities than the "readily achievable" standard of Title III, and places the burden of proof on Defendants.

47. The ADA Standards, the Barrier Free Subcode and A117.1 provide the guidance for determining whether the Hotel, including its pre-existing elements, denies access under the LAD. *Lasky v. Borough of Hightstown*, 426 N.J. Super. 68 (App. Div. 2012); *Lasky v. Moorestown Twp.*, 425 N.J. Super. 530 (App. Div. 2012); see *Pascuiti*, 87 F. Supp. 2d at 226. In addition, because the Hotel was constructed in or about 1986 and altered in 2014, 2018 and

2026, it was required to comply with the Barrier Free Subcode at each of those times. N.J.S.A. 52:32-4 to -6; N.J.A.C. 5:23-7.

48. JLM is the owner and PRM is the proprietor, lessee, manager and/or operator of the Hotel, a place of public accommodation. Marriott is a proprietor, manager or agent of the Hotel through its control of the Hotel's design standards, renovations and reservation system. Each Defendant aided and abetted the others in maintaining the barriers alleged, and Marriott in addition aided and abetted the denial of access by approving renovations that did not remove the barriers and by advertising and renting the Hotel's guest rooms as accessible. N.J.S.A. 10:5-12(e).

49. By maintaining the barriers described in paragraph 27, each of which violates the sections of the 2010 Standards and A117.1 cited there; by failing to provide the required number and dispersion of accessible guest rooms; by misdescribing the Hotel's accessible features and failing to permit the reservation of accessible rooms on equal terms; and by failing to make reasonable accommodations that would not impose an undue burden on their operation, Defendants have refused, withheld from and denied Plaintiffs the accommodations, advantages, facilities and privileges of the Hotel on account of disability, in violation of N.J.S.A. 10:5-4, 10:5-12(e) and 10:5-12(f)(1), and N.J.A.C. 13:13-4.3 and 13:13-4.11.

50. As a result, Plaintiff Fultz has suffered humiliation, embarrassment, indignity and emotional distress, for which he is entitled to compensatory damages without proof of severe distress or expert testimony. N.J.S.A. 10:5-3; N.J.S.A. 10:5-13; *Tarr v. Ciasulli*, 181 N.J. 70 (2004).

51. Plaintiffs are entitled to injunctive relief, and the prevailing party is entitled to reasonable attorney's fees, including litigation expenses, and costs. N.J.S.A. 10:5-27.1.

WHEREFORE, Plaintiffs demand judgment against Defendants JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.:

a. Declaring that Defendants, at the commencement of this action, are in violation of the LAD;

b. Enjoining Defendants to remove each barrier set out in paragraph 27, to make the Hotel and its accommodations readily accessible to and usable by individuals with disabilities in compliance with the Barrier Free Subcode, A117.1 and the 2010 Standards, and to make reasonable accommodations and modifications in their policies, practices and procedures;

c. Awarding Plaintiff Fultz compensatory damages, including damages for humiliation, embarrassment, indignity and emotional distress, under the LAD;

d. Awarding reasonable attorney's fees, litigation expenses, expert fees and costs under N.J.S.A. 10:5-27.1, including to AFDA; and

e. Granting such other relief as the Court deems just and proper.

**<u>THIRD COUNT</u>**

(New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.,
by Plaintiff Fultz against JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.)

52. Plaintiff Fultz repeats the allegations of the preceding paragraphs as if set forth at length.

53. The Consumer Fraud Act ("CFA") provides: "The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with

the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. 56:8-2.

54. Plaintiff Fultz, JLM, PRM and Marriott are each a "person" within the meaning of N.J.S.A. 56:8-1(d), which includes any natural person, company, business entity or association, and any agent, employee, member or officer thereof.

55. The Hotel's guest rooms, lodging and related services are "merchandise" within the meaning of N.J.S.A. 56:8-1(c), which includes "services or anything offered, directly or indirectly to the public for sale." The rental of a guest room is a "sale" within the meaning of N.J.S.A. 56:8-1(e), which includes "[a]ny sale, rental or distribution, offer for sale, rental or distribution."

56. The Hotel's web pages on marriott.com and the Marriott online reservation system are an "advertisement" within the meaning of N.J.S.A. 56:8-1(a), because they are an attempt, by publication, dissemination and solicitation, to induce members of the public to reserve and pay for guest rooms and services at the Hotel.

57. In late February 2026, before his stay, Plaintiff Fultz viewed the Hotel's web pages on marriott.com, including https://www.marriott.com/en-us/hotels/ewrpr-marriott-park-ridge/, and the Marriott online reservation system. Defendants, including Marriott, which publishes and controls that website and reservation system, and JLM and PRM, which supplied or approved the Hotel's content and are bound by it, published on those pages, under the headings "Accessible Hotel Features" and "Guest Room Accessibility," a list of the Hotel's accessible features, and invited guests to "Click here to see accessible rooms types at this hotel." Among other things, Defendants represented that the Hotel provides:

a. under "Accessible Hotel Features": "Accessible on-site parking"; "Van Accessible on-site parking"; "Accessible Areas with Accessible Routes from Public Entrance"; "Main Entrance is Accessible"; and "On-Site Restaurants are Accessible"; and

b. under "Guest Room Accessibility": "Mobility accessible rooms"; "Roll-in Shower"; "Accessible Vanities"; "Adjustable Height Hand-Held Shower Wand"; "Bathtub Grab Rails"; "Bathtub Seat"; "Non-slip Grab Rails in the Bathroom"; "Toilet Seat at Wheelchair Height - Toilet for Disabled"; "Lever Handles on Guest Room Doors"; "Lowered Deadbolts on Guest Room Doors"; "Lowered Night Guards on Guest Room Doors"; "Lowered Viewports in Guest Room Doors"; and "Lowered Electrical Outlets."

58. Relying on those representations, Plaintiff Fultz reserved and paid for a guest room at the Hotel through the Marriott reservation system, and Defendants assigned him a guest room designated as accessible.

59. Those representations were false when made and remained false during Plaintiff Fultz's stay on February 27 and 28, 2026. Contrary to Defendants' representations, the Hotel's parking, its routes from the public entrance and within the Hotel, its main entrance, its restaurant and other services, and the guest room designated as accessible, including its bathroom, were not accessible to Plaintiff Fultz and other persons with mobility disabilities, as set out in paragraph 27.

60. Defendants' representations that the Hotel and its guest room were accessible were affirmative misrepresentations of material fact, in violation of N.J.S.A. 56:8-2. Accessibility is material to a guest with a mobility disability, who must rely on such

representations to decide whether a hotel can be used at all. Where a CFA violation consists of an affirmative misrepresentation, the plaintiff need not prove that the defendant intended to deceive. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994).

61. Defendants also knowingly concealed, suppressed and omitted material facts with the intent that guests rely on that concealment, suppression and omission, in violation of N.J.S.A. 56:8-2. Upon information and belief, Defendants knew of the barriers set out in paragraph 27, which are open and obvious in the Hotel's parking, entrance, public areas and guest rooms, and which existed through the renovations of 2014, 2018 and 2026. Defendants nevertheless did not disclose those barriers on the Hotel's web pages or in its reservation system, and did not describe the Hotel's accessible features in the detail required by 28 C.F.R. § 36.302(e)(1)(ii), with the intent that persons with disabilities would reserve and pay for rooms at the Hotel.

62. Advertising and renting guest rooms as accessible to persons with disabilities, when the Hotel and the rooms are not accessible, and when a guest with a disability cannot discover the truth until after he has reserved, paid and arrived, is also an unconscionable commercial practice within the meaning of N.J.S.A. 56:8-2.

63. Defendants' conduct is unlawful under the CFA "whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. In any event, Plaintiff Fultz relied on Defendants' representations in selecting, reserving and paying for a room at the Hotel.

64. As a result of Defendants' unlawful practices, Plaintiff Fultz suffered an ascertainable loss of moneys or property within the meaning of N.J.S.A. 56:8-19. He paid $206.33 for his stay of February 27 and 28, 2026 for a guest room and hotel represented to be accessible to persons with disabilities. He did not receive what was represented. The guest room and the Hotel he received were not accessible, and were worth less than the accessible guest

room and hotel he was promised. His loss is measurable as the amount he paid, or alternatively as the difference between the value of the accessible accommodations represented and the value of the inaccessible accommodations received. See *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234 (2005); *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004).

65. There is a causal relationship between Defendants' unlawful conduct and Plaintiff Fultz's ascertainable loss. He reserved and paid for the room because of Defendants' representations that the Hotel and the room were accessible. See *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (elements of a private CFA claim are unlawful conduct, an ascertainable loss, and a causal relationship between them).

66. Under N.J.S.A. 56:8-19, Plaintiff Fultz is entitled to an award of threefold the damages he sustained, to "any other appropriate legal or equitable relief," including an injunction requiring Defendants to correct the Hotel's web pages and reservation system so that they accurately describe the Hotel's accessible features, and to an award of "reasonable attorneys' fees, filing fees and reasonable costs of suit," which the statute makes mandatory. The rights and remedies provided by the CFA are "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State," including the LAD. N.J.S.A. 56:8-2.13.

67. The circumstances constituting the fraud, including the representations made, the medium in which they were made, the time they were made and the facts that made them false, are stated with particularity in paragraphs 57 through 64 above. R. 4:5-8(a).

WHEREFORE, Plaintiff Fultz demands judgment against Defendants JLM Park Ridge LLC, PRM Hospitality, LLC and Marriott International, Inc.:

a. Declaring that Defendants have violated the Consumer Fraud Act, N.J.S.A. 56:8-2;

b. Awarding Plaintiff Fultz his ascertainable loss, trebled under N.J.S.A. 56:8-19;

c. Enjoining Defendants to correct the Hotel's web pages, listings and reservation system so that they accurately identify and describe the Hotel's accessible features, and to cease representing that the Hotel and its guest rooms are accessible until they are;

d. Awarding reasonable attorney's fees, filing fees and costs of suit under N.J.S.A. 56:8-19; and

e. Granting such other relief as the Court deems just and proper.

## FOURTH COUNT

(Fictitious Defendants John Doe(s) A through Z)

68. Plaintiffs repeat the allegations of the preceding paragraphs as if set forth at length.

69. Defendants John Doe(s) A through Z, fictitious names of Defendants, are liable for the conduct described above under Title III of the ADA, the LAD and/or the CFA, as their roles in owning, leasing, franchising, operating, designing, constructing, altering or maintaining the Hotel, or in publishing its web pages and reservation system, may appear.

WHEREFORE, Plaintiffs demand judgment against Defendants John Doe(s) A through Z for:

a. Damages under the LAD;

b. Treble damages under the CFA in favor of Plaintiff Fultz;

c. Injunctive relief under the LAD, the CFA and the ADA;

d. Attorney's fees and litigation expenses; and

e. Costs of suit.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Anthony J. Brady, Jr., Esquire is designated as trial counsel for Plaintiffs.

**CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)**

I certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. Other than the parties named in this Second Amended Complaint, I know of no other party who should be joined in this action at this time. I recognize my continuing obligation to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this certification.

**CERTIFICATION PURSUANT TO R. 1:38-7(b)**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

Respectfully submitted,

s/ Anthony J. Brady, Jr.
ANTHONY J. BRADY, JR., ESQUIRE
Attorney for Plaintiffs Mark Fultz and
Advocates for Disabled Americans (AFDA)

Dated: October 5, 2026